Plaintiff sued to recover the value of his two mules that were killed by defendant's southbound passenger train, about 5:30 p.m. August 20, 1945, approximately one-half mile south of Packton Station, Grant Parish, Louisiana. He alleges that the death of the animals was due solely to the negligence and carelessness of defendant's agents and employees in charge of and operating said train, in that the animals after getting on the track in plain view of the train crew, ran down the track ahead of the train a distance of 650 feet, and that no effort whatever was made to stop the train or reduce its speed in order to avert running into and killing the mules.
Defendant, while admitting that its train ran into and killed the mules at the time and place alleged, denies that the killing resulted from the negligence or carelessness of its agents in charge of the train.
From a judgment for plaintiff in the sum of $575, defendant appealed.
At the place where the mules were killed defendant's track is not fenced. Livestock may legally run at large in Grant Parish.
The train in question was going south at a speed of 50 miles per hour, or 71 1/3 feet per second. The animals were killed on a tangent of defendant's track that extended several miles above and below the locus of the accident.
[1] The train consisted of four passenger coaches, a tender, locomotive and possibly a baggage car. The distance within which it could have been stopped, moving at 50 miles per hour, is not shown. If it could not have been stopped within 650 feet, defendant carried the burden of proving that fact.
The mules were mainly used by plaintiff in loading and hauling logs. They were kept in a corral but escaped therefrom the day prior to the accident. Plaintiff, on learning of their escape began a search for them and was not over 200 yards from them when they were killed. At Packton, he learned that they were seen there an hour or so prior. It had rained the night before and, as he proceeded southerly, he soon observed their tracks along a dim path that ultimately led to the west side of defendant's right of way. It was at this point that the mules got on the track.
According to plaintiff's testimony and that of a man who lives at Packton, both of whom went to the locus of the accident within an hour after it occurred, the mules were struck approximately 650 feet from where they first reached the track. The tracks of the mules were plainly visible in the gravel ballast spread upon and between the ties. They determined from the character of these tracks that for about the last 550 feet of said distance, the mules were running. All of the tracks were within the rails until about 15 or 20 feet before the mules were struck, and at this point the tracks diverged. One mule was knocked into the barrow pit on the west side of the track while the other one was knocked to the ground on the cast side. Neither of these witnesses heard the several short blasts of the whistle of the locomotive that the engineer and fireman say were given as soon as the mules were seen approaching the track from the woods. *Page 765 
[2] The testimony adduced on plaintiff's behalf makes out a strong prima facie case against defendant. He did not content himself with merely proving the killing of his valuable mules by defendant's train, but went further and adduced proof that goes far to establish that had due diligence and care been observed by defendant's operatives the accident might have been avoided. He did not rely entirely upon the imputation of negligence that flows from proof of the killing of the stock by defendant's train, as is authorized by Act No. 70 of 1886.
Defendant, in its effort to sustain the defense of freedom of negligence, introduced as witnesses its engineer and fireman. The engineer testified that the animals, at the point where the cow trail enters the west side of the right of way, suddenly came galloping into view from the woods, at which time the train was not over 100 feet away, and the mules were then 45 feet or 50 feet from the right of way. The right of way measures 50 feet each way from the center of the track. He further testified that one of the mules crossed to the east side of the track while the other remained on the track and proceeded down it; that he set his brakes, bounded the whistle and tried to stop the train, but was too close to the mules to avert striking them; that the mule in front of the train traveled 75 feet or less before he was struck.
Analyzing the testimony of the engineer, it appears that the mules from the time first observed by him (he being on the west side of the train), as they emerged from the woods, traveled practically 100 feet to the track and that one of them covered an additional 85 feet or less down the track before being struck, while for the same time the train covered not more than that distance going at 50 miles per hour. According to this computation, at the speed the train was making, it required about two seconds to run down the mules after they were first seen by the engineer. It is wholly improbable that the mules were traveling as fast as the train. It reasonably follows that the mules were a great deal farther away when first seen by the engineer than he now thinks.
The engineer's testimony is substantially corroborated by that of the fireman, but as the fireman was on the left or east side of the train, he was not in as favorable position to observe the mules and their actions as was the engineer.
The record discloses that two rather dim trails intersect the west side of the defendant's right of way in the vicinity of the locus of the accident. One of these trails is over 600 feet north of it while the other is much closer. Plaintiff contends that the upper trail is the one from which the mules entered the right of way, while defendant contends that they were first seen by its engineer as they came into view from the lower trail. Plaintiff and his witnesses are quite positive that they identified the tracks of the animals from the upper trail to where they were killed. If defendant's witnesses are correct in their location of the trail from which the mules got on the track, it is evident the train could not have been stopped in time to avoid the accident; but if plaintiff and his witness are correct in their testimony, as to where the mules got on the track, a different situation is presented for it is not shown that the train could not have been stopped before running into the mules. It is not impossible that the engineer and fireman, riding on the train going at 50 miles per hour, could be mistaken in their testimony with reference to the location of the trail at the end of which the mules were first observed by the engineer.
At the conclusion of taking of testimony the case was closed except that the judge of the court, it was agreed, was to visit and inspect the scene at and about where the mules were killed. There is nothing in the record to indicate that the judge did this except the statement in plaintiff's counsel's brief that he did so, and thereafter rendered judgment in the case. In oral argument defendant's counsel challenged the right of opposing counsel to argue to the court that the judge had visited the scene.
No written reasons were given for the judgment rendered below. It is very likely the judge did visit and inspect the locus of the killing. We know that counsel would not assert that this was true without there *Page 766 
being foundation therefor. It is highly probable that in visiting the scene the judge acquired knowledge and gained impressions of such character as would have been of assistance to him in arriving at what he considered a just decision in the case. However, whether he visited the scene or not, is not pivotal in the case.
[3] It is our conclusion that defendant has failed to exonerate itself from the prima facie case made out by plaintiff, supported by the imputation of negligence arising from the fact of killing the mules in the manner and place alleged; and for this reason, the lower court, in our opinion, correctly resolved the factual issue in the case.
The value of the mules, as fixed by the trial judge, is not questioned here. The record clearly sustains such value.
Therefore, for the reasons herein given, the judgment appealed from is affirmed with costs.